UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

SHAHID TANVIR,

                                                 Plaintiff,

          -against-

NEW YORK CITY HEALTH & HOSPITALS
CORPORATION,

                                            Defendant.

**DEFENDANT'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS**

05 Civ. 5843 (BSJ)(RLE)

------------------------------------------------------------------ x

       Pursuant to Local Rule 56.1 of the Civil Rules of United States District Court for the Southern District of New York, defendant submits this Statement of Material Facts as to which it contends there are no genuine issues to be tried:

**Preliminary Facts**

       1.    Plaintiff, who self-identifies as a Pakistani Muslim over the age of 40, has been employed by the New York City Health and Hospitals Corporation ("HHC") since 1989 in the title of Laboratory Associate. See Plaintiff's Federal complaint, Exhibit "A."[1]

       2.    Plaintiff claims that he has sought several promotions within HHC but was denied these promotions on account of his race, national origin, and religion in violation of Title VII, and the State and City Human Rights Laws, his race in violation of 42 U.S.C. § 1981, and on account of his age, in violation of the Age Discrimination Employment Act ("ADEA"). See Id.

---

[1] Unless otherwise indicated, all references to "Exhibits" are to the exhibits annexed to the declaration of Carolyn Walker-Diallo, dated March 16, 2007.

3. Plaintiff began working for HHC on July 31, 1989, as a provisional Laboratory Associate Level A. Plaintiff was assigned to the Morrisania Diagnostic Treatment Center ("MDTC") in Bronx, NY. See Plaintiff's Employment Application, Exhibit "E."

4. As a Laboratory Associate Level A at MDTC, plaintiff's full-time primary responsibilities were to review and process laboratory specimens for send-out to reference laboratories. See Laboratory Associate Job Description, Exhibit "F." As part of his duties, plaintiff may be required to assist laboratory clerks with specimen handling and data entry when needed. Id. In the absence of the Manager or Assistant Manager, plaintiff may also be called upon to supervise clerks. Id. Plaintiff worked at the MDTC center until he was temporarily transferred to another location in April, 1995, and transferred back to MDTC in May, 1995.

5. On July 9, 1997, plaintiff was promoted to Laboratory Associate Level B. As a Laboratory Associate Level B, plaintiff could assign work to Level A Laboratory Associates, but plaintiff's primary job responsibilities remained the same. See id. The job description remained otherwise the same. Id.

6. Plaintiff remained at MDTC until he was transferred to Bellevue Hospital Center ("BHC") on September 21, 1999. See Memo re: involuntary transfer, Exhibit "H." Upon transfer to BHC, plaintiff worked, and continues to work in the Central Accessioning Unit of the Pathology Department as a Laboratory Associate Level B.

**January 2004 Coordinating Manager Position**

7. From December 26, 2003, to January 2, 2004, BHC's Human Resources Department posted a job opening for Coordinating Manager in the Pathology Department. See Posting # 44/04, Exhibit "I."

8. To qualify for the Coordinating Manager position, an individual must possess:

    (a) a Bachelors degree with three years of responsible experience.

    (b) a Masters degree with two years of full-time experience in an administrative or supervisory capacity.

    (c) a satisfactory equivalent combination of training, education and experience.

See id.

9. Some of the duties of a Coordinating Manager include, consulting with medical and professional staff to plan and coordinate joint patient and management objectives; and to participate in budgetary planning. See Coordinating Manager Job Description, Exhibit "J."

10. Plaintiff applied for the position on January 2, 2004, the last day that the job was posted. See Plaintiff's January 2, 2004 Coordinating Manager Position application, Exhibit "K." While plaintiff possesses a Masters Degree in Business, he does not have two years of full-time supervisory or administrative experience. See Laboratory Associate Job Description, Exhibit "F." See signed copy of HHC's Position Analysis Questionnaire, dated December 30, 1990, Exhibit "G"; See signed copy of HHC's Position Analysis Questionnaire, dated July 26, 2000, Exhibit "QQ"; See Plaintiff's 2001-2004 performance evaluations, Exhibits "RR"-"TT."

11. Sasha Hedge, a former Hospital Administrator Fellow also applied for the position. See Sasha Hedge's Application, Exhibit "L"; Sasha Hedge's Resume, Exhibit "M." As a fellow, Ms. Hedge's experience included preparing quarterly reports for BHC's finance

department, and designing a comprehensive database system for physicians to track and evaluate patients report performance, and evaluating department resource needs. See id.

12.     At the time of her application, Ms. Hedge possessed a Masters Degree in Public Health Policy and Management, and had experience in a supervisory or administrative capacity. See Copy of Sasha Hedge's Masters Degree, Exhibit "N"; Ms. Hedge's Resume, Exhibit "M."

13.     Sasha Hedge was promoted to the Coordinating Manager position on or about January 6, 2004. See Signed Coordinating Manager Job Description, Exhibit "O."

**Laboratory Microbiologist Position.**

14.     In order to apply for a position with BHC, a job candidate must first submit a formal application. See Deposition Transcript of Sara Rodriguez, Assistant Personnel Director at Bellevue Hospital, ("Rodriguez Tr.") Tr. 16:9-12, Exhibit "D." The formal application can be submitted either through BHC's Human Resources Department or through a specific department at BHC. See id.

15.     BHC posted several job openings for Laboratory Microbiologists. See Laboratory Microbiologist Job Postings, 2004-2005, Exhibits "Q"-"AA." Plaintiff never submitted an application for any of these positions either through BHC's Human Resources Department or his department. However, plaintiff wrote his supervisors on several occasions complaining about the qualifications of other employees that had been promoted to other positions and stating that he was more qualified than these employees. See Letter dated September 17, 2004 from plaintiff to Carole Raboy-Braunstein, Exhibit "GG"; Letter dated November 22, 2004 from plaintiff to Carole Raboy-Braunstein, Exhibit "HH"; Letter dated May 25, 2005 from plaintiff to Robert Barclay, Exhibit "LL" See Letter dated September 17, 2004 from plaintiff to Carole Raboy-Braunstein, Exhibit "II."

16. From 2003 to 2006, several individuals applied for these positions and BHC hired 24 Laboratory Microbiologists. Out of the 24, 14 are Asian, the same group in which plaintiff self-identifies, and 16 are over the age of 40. See List of Individuals Hired as Laboratory Microbiologists from 2003-2006, Exhibit "BB."

17. To assist plaintiff in the application process, plaintiff's former supervisor Carole Raboy-Braunstein informed him that he should apply for any positions as they become available. See Letter dated November 29, 2004 from Carole Raboy-Braunstein to plaintiff, attached as Exhibit "II."

18. The Coordinating Manager position was posted again in 2004 and 2006. See 2004 and 2006 Coordinating Manager Job Postings, Exhibit "JJ" and Exhibit "PP." However, despite Ms. Raboy-Braunstein's advice, plaintiff never submitted an application for the position of Laboratory Microbiologist.

**Administrative Charge And Suit**

19. Plaintiff filed a discrimination charge with the New York State Division of Human Rights ("SDHR") on March 29, 2004. See plaintiff's SDHR Complaint, Exhibit "DD." SDHR referred that charge to the Equal Employment Opportunity Commission ("EEOC") on May 18, 2004. See EEOC Charge of Discrimination, Exhibit "EE."

20. HHC responded to the charge on August 23, 2004. See HRA's response to plaintiff's SDHR complaint, Exhibit "FF." HHC denied that plaintiff had been discriminated against on account of his race, religion, age or national origin, or that defendant retaliated against him. Id. at Page 1-2.

21. The EEOC sent plaintiff a "Right to Sue" letter on April 15, 2005. See "Right to Sue" letter, Exhibit "KK."

5

22. Plaintiff commenced this federal lawsuit on or about June 23, 2005. See Plaintiff's Complaint, Exhibit "A."

**Plaintiff's Race, National Origin, and Religion Discrimination Claims.**

23. At his deposition plaintiff testified that he believes he was discriminated against based on his religion because "people who are given promotions at Bellevue are not Muslims." See Shahid Tanvir Deposition Transcript ("Pl. Tr.") 80:8-9, Exhibit "B." Plaintiff further testified that he believes he has been discriminated against on account of his race and national origins because "anybody who [obtains] the promotions for which [he applies] is not [] Pakistani." Id. at 84:7-8. Plaintiff also alleges that "younger people" are being given promotions over him. See id.; See also, Compl. at page 5. Plaintiff makes this allegation despite the fact that plaintiff does not know the age range, national origin, race, or religious affiliation of the individuals who have applied for these positions. See Id. at 70:21-23. Furthermore, plaintiff testified that he would compile information regarding the identities of individuals that have been treated better than him on account of his race, religion, national origin, or age. See id. at 76:4-8. Plaintiff has not produced such documentation.

24. Moreover, plaintiff states that the fact that Sonya Bonilla and Nancy Ortiz, individuals he identifies as Hispanic, were promoted to the title of Laboratory Associate by his supervisor, Gladys Beltran, who is also Hispanic, demonstrates that discrimination exists against him because of his national origin. Id. at 71:18-21; 85:16-19, Exhibit "B."

25. As to his age claims of age discrimination, plaintiff alleges that "younger people are getting promoted involuntarily" but plaintiff admits that no one ever commented on his age. Id at 66:8-12. However, plaintiff admits that no one ever commented regarding his age. Id. at 76:8-18.

26. Plaintiff further alleges that more than a year after he filed his March 2004 charge of discrimination, his superiors made him perform duties that were not in his job description, such as identifying and discarding specimens. See Compl. at page 9, Exhibit "A"; Pl. Tr. 59:15-22, Exhibit "B"; Letter dated June 18, 2005 from plaintiff to Joanne Carter, Exhibit "MM."

27. The Job description for Laboratory Associates Level A and B provides that Laboratory Associates may be called upon to assist office clerks in handling specimens. See Exhibit "F." Furthermore, Robert Barclay, Director of the Pathology Department, contacted the Office of Labor Relations to ensure that the request was within plaintiff's job responsibilities. See Barclay Tr. 34:16-36:25, Exhibit "C." Despite plaintiff's allegations that he was served with false charges, he admits that he was never written up nor does his personnel file reflect that he was disciplined. See Pl. Tr. 110:18-11:4, Exhibit "A."

28. Plaintiff further alleges that there is an "unwritten policy of discrimination" at BHC and that defendant has been negligent in preventing this continuous policy of discrimination. See Compl. at page 10, Exhibit "A."

**Conclusion**

29. In short, despite the documentary evidence, plaintiff believes that he has not been promoted to the title of Coordinating Manager and Laboratory Microbiologist on account of his race, age, national origin, or religion because everyone who obtains these positions are "lower than forty," "are not Muslims," and are "not Pakistani." See Pl. Tr. 70:9-11; 80:12-13; 84:7-8, Exhibit "B."

Dated: New York, New York
      March 16, 2007

**MICHAEL A. CARDOZO**
Corporation Counsel of the
 City of New York
Attorney for Defendant
100 Church Street, Room 2-140
New York, New York 10007
(212) 788-0868

By: _____
    Carolyn Walker-Diallo (CW 9022)
    Assistant Corporation Counsel